# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CTI SERVICES LLC, d/b/a CITADEL TECHNOLOGIES and ROGER WALKER, <br><br> Plaintiffs, <br><br> v. <br><br> KEN HAREMZA, an individual; T.D. WILLIAMS, INC., an Oklahoma corporation; ENERGY MAINTENANCE SERVICES GROUP I, LLC, successor-in-interest to ENERGY FACILITY SERVICES, INC.; HUNTING SPECIALIZED PRODUCTS, INC.; HYDRATECH ENGINEERED PRODUCTS, L.L.C.; and HUNTING PIPELINE SERVICES, L.L.C., <br><br> Defendants. | Case No. 09-CV-144-GKF-TLW |

## **OPINION AND ORDER**

This matter comes before the court on plaintiffs' Motion to Amend Complaint to Add Defendants. [Doc. No. 118]. Plaintiffs seek leave to amend to add Peter Blais ("Blais") and John Charest ("Charest") as defendants. Defendant Energy Maintenance Group I, LLC ("EMS") argues that the request is untimely and that the proposed amendments would be futile.

### **I. Background/Procedural Status**

This dispute involves competing composite wrap products designed to repair pipelines. Plaintiffs filed suit against defendants on January 28, 2009, in Tulsa County District Court. On March 16, 2009, the case was removed to federal court. [Doc. No. 2]. On January 28, 2011, plaintiffs requested leave to amend their complaint and add three new defendants. [Doc. No. 79]. The court granted leave. On March 29, 2011 plaintiffs requested leave to amend their complaint a second time to include Blais and Charest as defendants.

In January, 2005, Blais and Charest signed a Non-Disclosure and Confidentiality Agreement ("the Agreement") with plaintiff CTI Services, LLC, d/b/a Citadel Technologies ("Citadel"). At the time, Blais was the Director of Engineering and Charest was Vice President and General Manager of defendant Hunting Pipeline Services, LLC ("Hunting Pipeline"). The Agreement states that the "DISTRIBUTOR agrees to treat as secret and confidential . . . any confidential information furnished by the other party." [Doc. No. 118, Ex. 1, ¶ 1.2]. Under Blais's name is the address of Hunting Pipeline. Plaintiffs admit that "[w]hen this [A]greement was signed, Blais signed the agreement on behalf of [Hunting Pipeline]. [Doc. No. 118 at 2]. Plaintiffs alleges that Blais is now the owner and manager of Hydratech Engineered Products, LLC ("Hydratech"). Plaintiffs further allege that Hunting Pipeline and Hydratech have conspired with EMS to misappropriate and steal Citadel's confidential business information, trade secrets, and proprietary information. [Amended Complaint, Doc. No. 105 at ¶¶ 50-55].

Plaintiffs argue that the basis for adding Blais and Charest was available only as of March 7, 2011, when Hydratech responded to Citadel's subpoena issued in December of 2009. Plaintiffs do not seek to add any new claims for relief.

## II. Analysis

Rule 15 of the Federal Rules of Civil Procedure states that leave to amend a complaint shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). A court may refuse leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1992).

Defendant EMS argues (1) that plaintiffs' motion is untimely, because it was made two

2

years after the lawsuit was filed and because plaintiffs could have added Blais and Charest sooner, and (2) that the motion is futile, because neither Blais nor Charest is liable to plaintiffs.

### 1. Timeliness of Amendment

A district court may exercise its discretion and deny leave to amend solely for undue delay or untimeliness. *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1133 (10th Cir. 1987). Factors the court may consider to determine untimeliness include the public costs of protracted litigation (*Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379-80 (7th Cir. 1990)), whether a delay was extreme to the point of prejudice (*Id.*), and whether the movant can demonstrate reasons for delay or excusable neglect. *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). Of these factors, "[the Tenth] Circuit focuses primarily on the reasons for the delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

Neglect is not excusable where a plaintiff had the informational basis for amendment and failed to use it in a timely manner. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (affirming order denying leave to amend, noting that "plaintiff was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint [and he] offered no explanation for the undue delay").

In the instant case, plaintiffs' Motion for Leave was filed three days prior to the deadline set by the court (April 1, 2010). Additionally, plaintiffs assert that they were not aware of Blais and Charest's involvement in the case until March 7, 2011, when Hydratech released documents in response to Citadel's subpoena. [Doc. No. 118, Ex. 5]. Within three weeks of receiving the documents from Hydratech, Citadel made its Motion for Leave.

Plaintiffs have demonstrated reasons for the delay in adding Blaise and Charest – they were denied access prior to March 7, 2011, to information providing the basis for amendment. The court concludes that the motion is not untimely.

## 2. Futility of Amendment

EMS argues that plaintiffs' request to add Blais and Charest should be denied because the individuals cannot be liable for the actions of their corporate employer.

It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act, he is personally liable to a third person for injuries that proximately result. *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-409 (10th Cir. 1958); *see also All American Car Wash, Inc. v. Nat'l Pride Equip., Inc.*, 550 F.Supp. 166, 169 (W. D. Okla. 1981) ("Corporate officers are personally liable for alleged tortious conduct of the corporation if they personally took part in the commission of the tort or if they specifically directed officers, agents or employees of the corporation to commit such acts.") (citing *Donner v. Tams-Witmark Music Library, Inc.*, 480 F.Supp. 1229 (E. D. Pa.1979)); and *Okla. Federated Gold & Numismatics, Inc.*, 24 F.3d 136, 141 (10th Cir. 1994) ("Under Oklahoma law, an officer may be held liable for the torts that he personally commits."); *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1234 (Okla. 1989) (if an agent, acting within the scope of his authority, in the pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another, the agent becomes liable for the injury done); Restatement (Third) of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or

within the scope of employment."). Misappropriation or disclosure of trade secrets constitutes a tort for which corporate officers and/or agents may be subject to liability.

The court concludes that EMS has failed to show that adding Blais and Charest as defendants would be futile.[1]

### III. Conclusion

Plaintiffs' Motion for Leave to Amend Complaint to Add Defendants is hereby granted. Plaintiffs shall file their Second Amended Complaint on or before June 17, 2011.

ENTERED this 8th day of June, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[1] The exhibits attached to plaintiffs' motion support the proposition that the addition of Blais and Charest would not be futile. An email from Blais dated March 24, 2005 (CC to "CharestHunting@aol.com") refers to an epoxy filler and high strength epoxy, stating, "My expectations are we can sample the epoxies and reproduce them similar . . . As discussed I will plan to be out at your office to demonstrate the carbon fiber from this kit, probably with the sales staff in attendance." [Doc. No. 118, Ex. 5, at 1]. Another email sent by Blais to Charest on April 8, 2005 reads, "Attached are the results of . . . my visit with EFSI in Houston, TX this week. Mr. Faulk, President of EFSI is very interested in breaking their contract with Citadel and working with us." [Id. at 3]. A document summarizing a meeting held April 6, 2005, between Blais and the management of EFSI references the "intent to design a Carbon Fiber-Epoxy Composite similar to the current product that Citadel supplies to EFSI." [Id. at 4].