# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CTI SERVICES LLC, d/b/a CITADEL TECHNOLOGIES and ROGER WALKER, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KEN HAREMZA, an individual; T.D. )<br>WILLIAMSON, INC., an Oklahoma corporation; )<br>ENERGY MAINTENANCE SERVICES )<br>GROUP I, LLC, successor-in-interest to )<br>ENERGY FACILITY SERVICES, INC.; )<br>HUNTING SPECIALIZED PRODUCTS, INC.; )<br>HYDRATECH ENGINEERED PRODUCTS, )<br>L.L.C; and HUNTING PIPELINE SERVICES, )<br>L.L.C., )<br>)<br>Defendants. ) | Case No. 09-CV-144-GKF-TLW |

## OPINION AND ORDER

This matter is before the court on the Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) of defendant Hydratech Engineered Products, Inc. ("Hydratech"). [Doc. # 130].

This is a dispute over competing composite wrap products used to repair leaking or corroded piping systems. Plaintiff CTI Services LLC, d/b/a Citadel Technologies ("Citadel") develops and manufactures epoxy and carbon-composite systems for interior and exterior pipeline rehabilitation. Defendant Ken Haremza was a sales representative/marketing manager for plaintiff from 2000 until September 25, 2006. Defendants T.D. Williamson, Inc. ("TDW") and Energy Facility Services Inc. ("EFSI") were distributors for plaintiff. On January 28, 2009, plaintiffs filed suit against defendants in Tulsa County District Court asserting claims of breach of contract, breach of fiduciary duty and conversion, tortious interference with existing and

prospective business relations, unfair competition, violation of the Oklahoma Deceptive Trade Practices Act, violation of the Oklahoma Consumer Protection Act, commercial disparagement/ misappropriation of trade secrets/trade libel/injurious falsehood, unjust enrichment, violation of the Lanham Act, trademark and trade name infringement and violation of 78 O.S. §85 et seq. (misappropriation of trade secrets, and copyright infringement. [Doc. # 2-1]. TDW removed the case to federal court on March 16, 2009. [Doc. # 2].

In their Amended Complaint [Doc. #105], plaintiffs added as defendants Hunting Pipeline Services, LLC ("Hunting Pipeline"), Hunting Specialized Products, Inc. ("Hunting SP") and Hydratech, companies they claim developed the competing product, I-Wrap. Hydratech seeks dismissal for lack of personal jurisdiction, asserting that it did not exist at the time of the alleged wrongdoing by defendants and has never purposefully directed any continuous or systematic business activity within the State of Oklahoma. [Doc. #130 at 2].

## I. Allegations of Amended Complaint

The Amended Complaint[1] alleges Hydratech is an Ohio limited liability company formed in January 2009 and, "[u]pon information and belief," is the successor in interest to Hunting SP. [Doc. #105, Amended Complaint, ¶6]. It alleges Hunting SP is an Ohio corporation incorporated in 1989 [*Id.,* ¶5] and Hunting Pipeline is an Ohio "corporation" formed in January of 2002 [*Id.,* ¶7]. The Amended Complaint alleges "[u]pon information and belief, Hunting SP, Hydratech, and Hunting Pipeline are or were related entities and can be held liable for the acts and omissions of

---

[1]On June 16, 2011, plaintiffs filed, with leave of court, a Second Amended Complaint adding two new defendants – Peter Blais and John Charest. The Second Amended Complaint does not change the claims made against Hydratech.

each other." [*Id.*, ¶8].[2]  Further, "[t]hroughout this Amended Complaint, Hunting SP, Hydratech, and Hunting Pipeline may be referred to collectively as the "Hunting Defendants." [*Id.*].

Plaintiffs allege that in 2004 and/or 2005, Hunting Pipeline engaged in discussions with Citadel at its Oklahoma office about possibly becoming a distributor of Citadel products and services, but never entered into a distribution agreement. [*Id.*, ¶28].  Further, "As part of their discussions, Hunting Pipeline, Peter Blais, and John Charest entered into a Non-Disclosure and Confidentiality Agreement wherein they agreed to keep secret and confidential Citadel's confidential and proprietary information and not to make use of any such confidential information without written permission from Citadel." [*Id.*].  Plaintiffs allege that TDW, EMS, EFSI, and Hunting Pipeline were provided confidential, trade secret and proprietary information by Citadel, which they agreed not to disclose, misappropriate or use in competition against or in derogation of the interests of Citadel. [*Id.*, ¶29].  Plaintiffs allege:

> Upon information and belief, the Hunting Defendants have breached their fiduciary duties and breached the Non-Disclosure and Confidentiality Agreement with Citadel by misappropriating and misusing Citadel's confidential, proprietary and trade secret business information for their own use, by holding Citadel products out as their own, by falsely using Citadel's copyrighted information, by infringing Citadel's trade names and trademarks, by using Citadel's confidential information to develop similar or identical products to compete against Citadel, and by interfering with Citadel's business relationships.

[*Id.*, ¶35].

In Count IV of the Amended Complaint, plaintiffs allege the Hunting Defendants breached the Non-Disclosure and Confidentiality Agreement with Citadel.  [*Id.*, ¶48].  The

---

[2]The exact relationship between Hunting SP and Hunting Pipeline is unclear.  The Affidavit of Peter Blais establishes–and plaintiffs have not contested–that Hunting SP is a wholly owned subsidiary of Hunting PLC, an international energy services provider.  *See* §II, *infra.*

3

Hunting Defendants are also included with all other defendants in Count V, breach of fiduciary duty, conversion and conspiracy; Count VI, tortious interference with existing and prospective business relations; Count VII, misappropriation of trade secrets; Count VIII, violation of the Oklahoma Deceptive Trade Practices Act; Count IX, violation of the Oklahoma Consumer Protection Act; Count X, commercial disparagement, trade libel and injurious falsehood; Count XI, unjust enrichment; Count XII, violation of the Lanham Act; Count XIII, trademark and trade name infringement; Count XIV, violation of 78 O.S. § 85, *et seq.*; and Count XV, copyright infringement. [*Id.* at 9-17].

## II. Blais Affidavit

Peter Blais is the owner and manager of Hydratech. [Doc. #130, Ex. 1, Affid. of Peter R. Blais, ¶1].[3] In his affidavit, Blais states that Hydratech, an Ohio limited liability company, did not exist before January 7, 2009, when he caused to be filed the initial articles of organization with the Ohio Secretary of State. [*Id.*]. Hydratech was organized for the specific purpose of acquiring all of the business assets and real property of defendant Hunting SP, which purchase was accomplished on or about January 30, 2009, pursuant to an asset purchase agreement. [*Id.,* ¶2]. Blais states the asset purchase agreement provides that Hydratech did not assume any obligation or liabilities of Hunting SP relating to its business operations, which remained the sole responsibility of the seller. [*Id.*]. Blais states that it is his understanding that, as of the time of the asset sale, Hunting SP was a wholly owned subsidiary of Hunting PLC, which continues in business as an international energy services provider that manufactures and distributes products

---

[3]Plaintiffs assert in their Response that Blais was previously the Project Manager for Hunting SP and, before, was the Director of Engineering of Hunting Pipeline.

primarily for oil and gas extraction and, according to its website (http://www.hunting.plc.uk/activities), has a "large presence" in North America and maintains a corporate office in the United States. [*Id.,* ¶3].

Blais states that Hydratech's principal place of business and the only office location it has ever operated is 1210 Glendale Milford Rd., Cincinnati, Ohio and the adjacent parcel at 10448 Chester Road, Cincinnati, Ohio. Both parcels of real estate were acquired by Hydratech in connection with the asset purchase from Hunting SP. [*Id.,* ¶4]. Hydratech has never had any assets, office, or place of business in Oklahoma, nor has it had any employees or retained or engaged any agents in Oklahoma. [*Id.,* ¶¶5-6]. It does not process, manufacture or sell products that are routinely used or consumed in Oklahoma in the ordinary course of business, nor has it directly solicited any prospective customer from the state. [*Id.,* ¶¶7-8]. It has not had and does not currently have any banking relationship in Oklahoma and makes no payments in the state. [*Id.,* ¶10].

Hydratech has not sold any product directly to any Oklahoma buyer. In one instance in 2009, it sold product to a customer from Kansas City, Kansas, who then requested that Hydratech ship the product to a location in Oklahoma. That transaction represented approximately 1% of Hydratech's total sales for 2009. [*Id.,* ¶11]. In approximately October 2010, Hydratech contracted with a Kentucky service company, Spartan Construction. Spartan Construction had been contracted by another nationwide engineering company that had been contracted by a third company that had assets located in Oklahoma. Spartan retained and paid for the services of a Hydratech technician to go to Oklahoma and inspect and report back to Spartan on the condition of a pipe on site in Oklahoma. Spartan was Hydratech's only customer for that job and Hydratech

was paid approximately $4,000 plus travel expense. [*Id.,* ¶12]. Other than these transactions, Hydratech has conducted no business activity in Oklahoma and has not been involved in any other business ventures in the state. [*Id.,* ¶13].

### III. Analysis

Hydratech seeks dismissal from the lawsuit based on lack of personal jurisdiction. In considering a motion to dismiss pursuant to Rule 12(b)(2), a court must determine whether the plaintiff has alleged sufficient facts to establish the court's personal jurisdiction over the defendant. If jurisdiction is contested, the plaintiff bears the burden of establishing jurisdiction. *AST Sports Science, Inc. v. CLF Dist. Ltd.,* 514 F.3d 1054, 1056 (10th Cir. 2008). Where, as here, the question of personal jurisdiction is disputed in the preliminary stages of litigation, "the plaintiff need only make a prima facie showing of jurisdiction to defeat the motion [to dismiss]." *Id.* The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). The court will accept as true the allegations in plaintiff's complaint, and all factual disputes will be resolved in the plaintiff's favor. *Intercon Inc. v. Bell Atl. Internet Sol'ns,* 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). "In Oklahoma, this two-part inquiry collapses into a single due process analysis," because Oklahoma permits the exercise

of personal jurisdiction to the full extent permitted by the United States Constitution. *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir.1998) (citing Okla. Stat. tit. 12, § 2004 F). Accordingly, the only question remaining is whether the exercise of personal jurisdiction over the nonresident defendant comports with due process. *See AST Sports Science*, 514 F.3d at 1057. The Due Process Clause prevents courts from exercising jurisdiction over a nonresident defendant unless "there exist 'minimum contacts' between the defendant and the forum state." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). The "minimum contacts" standard can be satisfied in either of two ways: First, the court may exert specific jurisdiction over a defendant who has "purposefully directed his activities at residents of the forum," provided "the litigation results from alleged injures that arise out of or relate to those activities." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1986 (10th Cir. 1998)) (internal citations and quotation marks omitted). Alternatively, the court may maintain general personal jurisdiction over a defendant who has maintained continuous and systematic general business contacts with the forum state. *Id.* (quoting *OMI Holdings*, 149 F.3d 1986) (internal citations and quotation marks omitted).

Plaintiff asserts the court has specific personal jurisdiction over Hydratech because: (1) Hydratech knows it is using Citadel's alleged misappropriated trade secrets, proprietary and confidential information and copyrighted materials (the "Trade Secrets") on an ongoing, daily basis in the manufacture and sale of its products, I-Wrap and HydraWrap; (2) Hydratech knows the Trade Secrets are owned by Citadel and originated in Oklahoma; (3) Hydratech knows Citadel has been harmed in Oklahoma as a "direct result" of Hydratech's manufacture and sale of products developed using the Trade Secrets; (4) Blais traveled to Oklahoma to sign the Non-Disclosure and Confidentiality Agreement on behalf of Hunting Pipeline; (5) Hydratech sells its product, I-Wrap

7

to customers in Oklahoma through its distributor, defendant Energy Maintenance Service Group I, L.L.C. ("EMS"); (6) Hydrotech "*knowingly* continues to conspire" with EMS to make a profit at the expense of Citadel on products developed using the Trade Secrets; and (7) Hydratech is the "successor entity" to Hunting SP, which Hydratech knows "conspired with Peter Blais and representatives of Energy Facility Services Inc. ("EFSI"), the predecessor to EMS, from 2004 to 2008 to misappropriate Citadel's Trade Secrets. [Doc. #150 at 4-5].

The first, second, third and sixth arguments urged by plaintiff relate to the basis of alleged *liability* of Hydratech for purported theft of the Trade Secrets. However, the issue here is *not* whether plaintiffs have stated a cognizable claim against Hydratech, but whether the court has personal jurisdiction over the defendant. Thus, the court must address whether Blais's signing in Oklahoma of the non-disclosure agreement on behalf of Hunting Pipeline, the use or sale in Oklahoma of Hydratech's products by a distributor and Hydratech's purchase of the assets of Hunting SP confer personal jurisdiction of this court over Hydratech.

The specific-jurisdiction inquiry has two components: First, the court must determine "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *OMI Holdings, Inc.,* 149 F.3d at 1091 (quoting *World-Wide Volkswagen,* 444 U.S. at 297). Second, the court must evaluate whether the exercise of jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice." *Id.* (quoting *Asahi Metal Indus. Co.,* 480 U.S. 102, 113 (1982)).

When determining whether a defendant has established minimum contacts with a state, courts consider whether the defendant "purposefully directed its activities at residents of the forum," and "whether the plaintiff's claim arises out of or results from 'actions by the defendant

8

*himself* that create a substantial connection with the forum state.'" *Id.* at 109l (quoting *Asahi Metal Indus. Co.,* 480 U.S. at 109). Where, as here, the conduct complained of consists of an intentional tort, the "purposeful direction" element requires both that the defendant "foresaw (or knew) that the effects of [its] conduct would be felt in the forum state [and] that [the defendant] undertook intentional actions that were expressly aimed at the forum state." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,* 514 F.3d 1063, 1077 (10th Cir. 2008) (emphasis removed). In addition to reflecting purposeful availment or direction, "the cause of action must arise out of [the defendant's] contacts" with the state. *Kuenzle v. HTM Sport-Und Frezeitgerate AG,* 102 F.3d 453, 456 (10th Cir. 1996). Accordingly, when evaluating Hydratech's contacts with the forum, the court looks only to those contacts that are related to the plaintiff's claim, and we ignore those contacts that are unrelated to the conduct underlying the lawsuit. *Soma Med. Int'l. v. Standard Chartered Bank,* 196 F.3d 1292, 1298 (10th Cir. 1999).

With these guidelines in mind, the court examines the remaining alleged grounds for the exercise of personal jurisdiction.

### A. Blais's Signing of Non-Disclosure Agreement on Behalf of Hunting Pipeline

On January 19, 2005, Blais, as a representative of Hunting Pipeline, signed a Non-Disclosure and Confidentiality Agreement at the offices of Citadel in Sand Springs, Oklahoma. Plaintiffs contend the conduct of Blais was sufficient to confer personal jurisdiction over Hydratech. However, since Hydratech did not exist in 2005, it could not have "purposefully directed [its] activities at residents of the forum"–a prerequisite for a finding of specific jurisdiction. *Burger King Corp. v. Redzewicz,* 471 U.S. 462, 472 (1985). Additionally, Blais is not alleged to have signed the nondisclosure agreement on behalf of Hunting SP.

9

### B. Sale of Hydratech Products in Oklahoma by Distributor

In 2009, Hydratech sold $1,290.00 of one of the competing products, "DW Product," to EMS in Houston. [Doc. #150-5 at 25, Ex. 11]. It appears from email between EMS and Hydratech that EMS planned to use the product on a project at a refinery in Wynnewood, Oklahoma. [*Id.*] As previously noted, in considering whether Oklahoma may exercise specific jurisdiction over Hydratech, the court must first determine whether Hydratech has established minimum contacts with the state. *OMI Holdings, Inc.,* 149 F.3d at 1091. This, in turn, requires the court to determine whether the defendant "purposefully directed activities at residents of the forum" and "whether the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *OMI Holdings, Inc.,* 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 109 (1987). Where–as here–the conduct complained of consists of an intentional tort, the "purposeful direction" element requires both that the defendant "foresaw (or knew) that the effects of [its] conduct would be felt in the forum state [and] that [the] defendant[] undertook intentional actions that were expressly aimed at the forum state." *Dudnikov v. Chalk & Mermillion Fine Arts, Inc.,* 514 F.3d 1063, 1077 (10nth Cir. 2008) (emphasis removed). While it appears that Hydratech knew the product was ultimately destined for a refinery in Oklahoma, Hydratech did not sell and ship the product to a customer in Oklahoma, but rather to a distributor in Houston. In turn the distributor, defendant EMS presumably sold and delivered the product to the customer in Wynnewood. Thus, the court cannot conclude that Hydratech, by selling product to a distributor in Houston, "undertook intentional actions that were expressly aimed at the forum state." *Id.*

### C. Hydratech's Acquisition of Hunting SP Assets

Pursuant to a January 30, 2009, asset purchase agreement (the "Asset Purchase Agreement") between Hunting SP and Premium Finishes, Inc. as sellers (collectively referred to as "Seller") and Hydratech, 1210 Glendale Milford Road, LLC and 10448 Chester Road, LLC as purchasers (collectively referred to as "Purchaser"), the Purchaser acquired substantially all of the assets of the Seller. [Doc. #150-3, Ex. 5, Asset Purchase Agreement]. The Asset Purchase Agreement provided:

> 2. In view of certain environmental restrictions and other considerations affecting the conveyance, use and value of certain of the Assets, Purchaser and Seller have agreed that, on and subject to the further terms and conditions set forth herein, Seller will sell and Purchaser will purchase the Assets for $1.00, free and clear of all liens, encumbrances and claims of any kind, except as otherwise set forth herein.

The assets were conveyed "as is where is, with all faults," [*Id.,* § 6.2] and Seller explicitly disclaimed any warranties or representations as to, *inter alia,* title matters, "environmental matters relating to the real property or any portion thereof, including, without limitation, the presence of hazardous materials in, on, under or in the vicinity of the real property," the condition of assets and "the existence or non-existence of underground storage tanks, surface impoundments or landfills." [*Id.*, §6.1].

Hunting SP represented in the Asset Purchase Agreement: "<u>Solvency</u>. Seller shall not be rendered insolvent by virtue of the conveyance of Assets contemplated herein." [*Id.,* § 3.7].

"A corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for actions of its predecessor." *Williams v. Bowman Livestock Equipment Company,* 927 F.2d 1128, 1132 (10th Cir. 1991). Under Oklahoma law:

> The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for

the debts and liabilities of the transferor. Exceptions to the rule are: (1) Where there is an agreement to assume such debts or liabilities (2) Where the circumstances surrounding the transaction warrant a finding that there was a consolidation or merger of the corporations, or (3) that the transaction was fraudulent in fact or (4) that the purchasing corporation was a mere continuation of the selling company.

*Pulis v. United States Electrical Tool Co.,* 561 P.2d 68, 69 (Okla. 1977); *See also Crutchfield v. Marine Power Engine Co.,* 209 P.3d 295, 297 (Okla. 2009).

It is undisputed that Hydratech did not assume the debts and liabilities of the sellers. Similarly, there is no evidence of a consolidation or merger. Plaintiffs contend, however, that (1) the transaction was fraudulent because the purchaser paid no consideration and (2) Hydratech is a "mere continuation" of Hunting SP because Blais the owner of Hydratech, was formerly employed by Hunting SP and because Hunting SP was dissolved after the asset sale. [Doc. #150-4, Ex. 6]

Under Ohio law, a buyer's assumption of risk of destruction, loss or damage is deemed adequate consideration for purposes of a sale of assets. *See G & J Pepsi Cola Bottling, Inc. v. Limbach,* 548 N.E.2d 936, 939 (Ohio 1990). Hydratech assumed environmental risks associated with the sale of the assets. Therefore, the court rejects plaintiffs' contention that no consideration was paid for the assets.

Plaintiffs also argue, "Based on either the 'mere continuation' or 'fraudulent tranasction' exception to the general rule of non-liability of the successor entity...Hydratech is the successor entity to Hunting SP," and "[a]s a result, all of the contacts which Hunting SP and Peter Blais had with the State of Oklahoma...should be imputed to Hydratech." [Dkt. #150 at 16-17]. This argument cannot withstand scrutiny. Hydratech acquired assets of Hunting SP–not Hunting Pipeline. Blais was an employee of Hunting Pipeline at the time he signed the nondisclosure agreement. Aside from a conclusory allegation in the Amended Complaint that Hunting Pipeline,

12

Hunting SP and Hydratech are "related entities" [Dkt. #105, ¶8], plaintiffs have submitted *no* evidence concerning the relationship between Hunting Pipeline and Hunting SP, no evidence of activities in Oklahoma by Hunting SP, and no evidence concerning whether or when Blais was employed by Hunting SP. Thus, plaintiffs cannot rely on the activities of Hunting Pipeline to fulfill the requirement for "minimum contacts" between Hydratech and Oklahoma.

As further support for their fraud and "mere continuation" arguments, plaintiffs point to the dissolution of Hunting SP with the Ohio Secretary of State on January 3, 2010 [Doc. #150-4, Ex. 6]. However, under Ohio Revised Code § 1701.88(B), "[a]ny claim existing or action or proceeding pending by or against the corporation or which would have accrued against it may be prosecuted to judgment ..." and Ohio courts, applying this statute, have found that a judgment may be taken and enforced against the assets of a dissolved corporation in the hands of its shareholders. *See Bob's Beverage, Inc. v. ACME, Inc.,* 169 F.Supp.2d 695, 719 (N.D. Ohio 2001) citing *North Consultants, Inc. v. Jane Stimel-Givens,* 1985 WL 10281 at *3 (Ohio App. 10 Dist., May 14, 1985). Hunting SP represented in the Asset Purchase Agreement that the sale would not render it insolvent. Plaintiff is entitled to assert claims against Hunting SP, and has done so in this action. Additionally, the Blais affidavit establishes that Hunting SP's parent corporation still does business in the United States. Thus, plaintiffs are not without recourse against Hunting SP or its owner.

## Conclusion

Plaintiffs have not carried their burden of establishing the court has personal jurisdiction over Hydratech.[4] Therefore, the defendant's Motion to Dismiss for Lack of Personal Jurisdiction

---

[4] The court herein makes no findings regarding the merits of plaintiffs' claims against Hydratech.

[Doc. #130] is granted.

ENTERED this 21st day of June, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma