IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CTI SERVICES LLC, d/b/a CITADEL TECHNOLOGIES and ROGER WALKER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KEN HAREMZA, an individual; T.D. WILLIAMSON, INC., an Oklahoma corporation; ENERGY MAINTENANCE SERVICES GROUP I, LLC, successor-in-interest to ENERGY FACILITY SERVICES, INC.; HUNTING SPECIALIZED PRODUCTS, INC.; HYDRATECH ENGINEERED PRODUCTS, L.L.C; and HUNTING PIPELINE SERVICES, L.L.C., | ) ) ) ) ) ) ) ) ) ) ) | Case No. 09-CV-144-GKF-TLW |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court on the Motion for Partial Summary Judgment of defendant Energy Maintenance Services Group I, LLC ("EMS"). [Doc. # 50].

This is a dispute over competing composite wrap products used for the prevention and repair of leaking or corroded piping systems. Plaintiff CTI Services LLC, d/b/a Citadel Technologies ("Citadel") develops and manufactures epoxy and carbon-composite systems for interior and exterior pipeline rehabilitation. EMS states that, from 2001 until approximately 2006, it (through its predecessor, Energy Facility Services, Inc. ("EFSI")) purchased Citadel's carbon based wrap for making repairs to pipelines.

EMS seeks partial summary judgment as follows:

1. EMS contends that because there is no signed distribution agreement, the statute of frauds prohibits Citadel from recovering on its claims for breach of contract (Count III of the

Second Amended Complaint[1]), breach of fiduciary duties (Count V of the Second Amended Complaint), and misappropriation of trade secrets (Count VII of the Second Amended Complaint).

2. EMS argues that Roger Walker, the sole shareholder of Citadel, has no standing to pursue any of the "non-trademark" claims he asserts in this lawsuit.

3. EMS contends that plaintiffs' claims for "breach of fiduciary duties and conversion against all defendants/conspiracy" (Count V of the Second Amended Complaint), misappropriation of trade secrets (Count VII of the Second Amended Complaint), and "unfair competition/prima facie tort" (Count VII in the original Petition) are displaced by the Uniform Trade Secrets Act. The motion is moot as to the claim for "unfair competition/prima facie tort," as it is not contained in the Second Amended Complaint.

4. EMS argues that Oklahoma does not recognize a cause of action for "prima facie tort," an argument that is moot for the reason stated above.

5. EMS seeks partial summary judgment on plaintiffs' claim for violation of the Oklahoma Consumer Protection Act (Count IX of the Second Amended Complaint) because plaintiffs were not consumers of EMS' products.

6. EMS seeks partial summary judgment on plaintiffs' claim for "Commercial Disparagement/Trade Libel/Injurious Falsehood" (Count X of the Second Amended Complaint) "to the extent that Plaintiffs base this claim on any alleged statements made more than one year before this lawsuit was filed," and

---

[1] EMS's motion was directed to the claims contained in Citadel's original Petition filed in state court. On June 16, 2011, plaintiffs filed, with leave of court, a Second Amended Complaint adding two new defendants. Most but not all of the claims to which EMS's motion is directed remain in the Second Amended Complaint.

7. EMS argues that Citadel's claim for Commercial Disparagement/Trade Libel/Injurious Falsehood (Count X of both the original Petition and the Second Amended Complaint) is duplicative of plaintiffs' claim for unfair competition (Count VII in the original Petition).

## I. Uncontested Material Facts

Nine of EMS's twelve statements of allegedly uncontested material fact are merely statements about what plaintiffs allege in some of their claims. One of the statements recites the date on which plaintiffs filed their Petition in state court. Two of the statements go to substantive fact:

First, EMS states that neither Citadel nor Walker entered into a distributorship with EMS or EFSI. Plaintiffs deny EMS's contention, stating that they have produced unsigned drafts, but have been unable to locate a signed version of the agreement.

Second, plaintiffs admit they "have not been and are not consumers of any of EMS's products."

## II. Analysis

### A. The Alleged Distributorship Agreement

Citadel claims EMS owed fiduciary duties to Citadel based on its "status as distributor[] for Citadel . . ." EMS contends that because there is no signed distributorship agreement, the statute of frauds, 15 Okla. Stat. § 136, prohibits Citadel from recovering on its claims for breach of contract (Count III of the Second Amended Complaint), breach of fiduciary duties (Count V of the Second Amended Complaint), and misappropriation of trade secrets (Count VII of the Second Amended Complaint).

Defendant's argument regarding the common law claim for misappropriation of trade

3

secrets is moot, inasmuch as plaintiffs have conceded that claim is displaced by the Oklahoma Uniform Trade Secrets Act ("OUTSA") (*See* §IIC, *infra*). The claim for breach of fiduciary duties does not require the existence of a written distributorship agreement. *See Sellers v. Sellers,* 428 P.2d 230, 236 (Okla. 1967) ("The expression 'fiduciary relationship' is one of broad meaning, including both technical relations and those informal relations which exist whenever one man trusts and relies on another.") The motion for partial summary judgment is denied as to the fiduciary duty claim on this particular ground.

Oklahoma recognizes the general principle that "an [oral] agreement that, by its terms, is not to be performed within a year from the making thereof" is not actionable. 15 Okla. Stat. § 136. A contract that provides express dates extending beyond one year from the execution of the contract must be in writing. *Funk v. Anderson-Rooney Operating Co.*, 423 P.2d 465, 467 (Okla. 1966). Contracts that are for an indefinite duration are not subject to the statute of frauds. *Krause v. Dresser Industries, Inc.*, 910 F.2d 674, 679 (10th Cir. 1990); *Chalfant v. Tubb*, 453 F.Supp.2d 1308, 1322 (N.D. Okla. 2006). Courts should void a contract under the statute of frauds only if the clear understanding of the parties was that the contract would not be performed within one year. *Id.*, citing *Municipal Gas Co. v. Gilkeson*, 16 P.2d 247, 249 (1932). If memoranda or writings showing an existing and binding contract, a concluded agreement, and a meeting of the minds are lost or destroyed, the contents thereof may be proved by oral testimony after a proper foundation has been laid. *Joseph E. Seagram & Sons, Inc. v. Shaffer*, 310 F.2d 668, 674-75 (10th Cir. 1962).

The evidentiary materials appended to the briefs submitted to the Court indicate the existence of genuine issues of material fact at this time which preclude summary judgment for

4

EMS on plaintiffs' claim for breach of contract. Such issues include, but are not necessarily limited to: the existence of an agreement and its terms; whether the writings relied upon are signed by the party to be charged; and whether Garland Faulk of EFSI understood and believed that a contract existed between Citadel and EFSI in April of 2005.

In its motion, EMS argued that it was entitled to partial summary judgment because no distributorship agreement exists or existed. In its supplement to the motion, EMS withdrew its earlier premise and shifted ground, arguing that the partially executed Industrial Distributor Agreement contained none of the confidentiality or non-compete terms claimed by Citadel. The Court cannot consider new arguments for partial summary judgment contained in a supplemental brief.

The Court denies the motion insofar as it is premised upon the absence of a binding distributorship agreement.

### B. Standing of Plaintiff Roger Walker

EMS contends that plaintiff Roger Walker has no standing to pursue any of the "non-trademark" claims asserted in this action. Walker responds that he does not intend to pursue such claims. Insofar as the Second Amended Complaint asserts each of its fifteen (15) claims on behalf of both plaintiffs,[2] EMS's motion is granted as to Walker's "non-trademark" claims.

Neither EMS nor plaintiffs delineate what claims they consider to be "non-trademark" claims. Upon review of the Second Amended Petition, it appears to this Court that all claims but for Count XIII are "non-trademark" claims. Although a Lanham Act claim is sometimes a "trademark" claim, plaintiffs' Lanham Act claim (Count XII) alleges unfair competition and

---

[2] Each of the claims is made by "Citadel," defined as including both plaintiffs. *See* ¶ 2, Second Amended Complaint.

5

makes no mention of trademarks. Counsel shall confer and advise the Court at the upcoming Status/Scheduling Conference whether they concur with the Court's reading of the Second Amended Complaint insofar as which are "non-trademark" claims.

### C. Displacement by the Uniform Trade Secrets Act

EMS contends that Citadel's claims for "breach of fiduciary duties and conversion against all defendants/conspiracy" (Count V of the Second Amended Complaint), misappropriation of trade secrets (Count VII of the Second Amended Complaint), and "unfair competition/prima facie tort" (Count VII in the original Petition) are displaced by Oklahoma's Uniform Trade Secrets Act ("OUTSA").[3] As previously mentioned, the motion is moot as to the claim for unfair competition/prima facie tort, as it is not contained in the Second Amended Complaint.

OUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret [but] does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret." 78 Okla. Stat. § 92(A) & (B)(2).

Citadel concedes that its claim for common law misappropriation of trade secrets (Count VII of the Second Amended Complaint) is displaced by OUTSA. EMS's motion for partial summary judgment is therefore granted with regard to Count VII of the Second Amended Complaint.

In their claim for "breach of fiduciary duties and conversion against all defendants/conspiracy" (Count V of the Second Amended Complaint), plaintiffs allege, in pertinent part:

" . . . EMS . . . owed Citadel fiduciary duties to keep Citadel's

---

[3] The Second Amended Complaint contains a claim for violation of the Uniform Trade Secrets Act, 78 Okla. Stat. §§85, et seq. (Count XIV).

> **trade secrets** and confidential business information secret . . . [¶ 53]. Defendants breached their fiduciary duties as well as misappropriated and stole **trade secrets**, both individually and through their conspiracy." [¶ 55]. [Emphasis added].

To the extent Citadel claims the information misappropriated and converted were "trade secrets," the claim is "no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation." *Powell Products, Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996). Further, to the extent the claim for "breach of fiduciary duties and conversion/conspiracy" is based upon the alleged misappropriation of trade secrets, it is displaced by OUTSA. *Id.* at 1475. However, to the extent the claim is based upon breach of the alleged duties to keep other confidential business information secret, it is not displaced by OUTSA.

For these reasons, the motion for partial summary judgment as to plaintiffs' claim for "breach of fiduciary duties and conversion against all defendants/conspiracy" (Count V of the Second Amended Complaint) is granted, insofar as it is based upon the alleged misappropriation of trade secrets.

### D. "Prima Facie Tort"

Plaintiffs concede that Oklahoma does not recognize a cause of action for "prima facie tort." Moreover, as previously stated, the argument is moot because the Second Amended Complaint does not contain a claim for prima facie tort.

### E. Oklahoma Consumer Protection Act Claim

The commission of any act or practice declared to be a violation of the Oklahoma Consumer Protection Act ("OCPA") "shall render the violator liable to the *aggrieved consumer*

for the payment of actual damages sustained by the customer." 15 Okla. Stat. § 761.1(A) (emphasis added). EMS contends that since plaintiffs were never consumers of EMS' products, they lack standing to raise a claim for damages under the Act.

The OCPA does not define the term "consumer." Citadel points out that the OCPA defines the term "consumer transaction" as:

> the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed or any other article, commodity, or thing of value wherever located, for purposes that are personal, household *or business oriented.* (emphasis added).

Citadel argues that it has standing to pursue an OCPA claim because: 1) Citadel was previously involved between 2001 to 2006 in a "consumer transaction" with EMS's predecessor-in-interest as a distributor of a commodity – Citadel's products – for the "business oriented" purpose of selling and distributing those products; 2) the OCPA does not exempt a business like Citadel from recovering thereunder; 3) the OCPA defines "person" to include a corporation or any other legal entity, 15 Okla. Stat. § 752(1); and 4) the court in *John Labatt Ltd. v. Molson Breweries*, 853 F.Supp. 965 (E.D. Mich. 1994) permitted a non-consumer competitor to bring suit under the Michigan Consumer Protection Act.

Judge David Russell of the Western District of Oklahoma outlined the rules one must follow in construing statutes like the OCPA:

> "The primary goal of statutory construction is to determine legislative intent. That intent is to be ascertained from the statute in light of its general purpose and object. It is presumed that the Legislature has expressed its intent in a statute and that it intended what is so expressed." *TXO Prod'n Corp. v. Oklahoma Corp. Comm'n*, 829 P.2d 964, 968-69 (Okla. 1992) (footnotes omitted); *Ledbetter v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n*, 764 P.2d 172, 179 (Okla. 1988) (fundamental rule of statutory

>construction is to ascertain and, if possible, give effect to the
>intention and purpose of the Legislature as expressed in a statute);
>*Cox v. Dawson*, 911 P. 2d 272, 276 (Okla. 1996).
>
>>To ascertain legislative intent, the Court examines the
>>language of the pertinent statute. *Oklahoma Ass'n for Equitable
>>Taxation v. City of Oklahoma City*, 901 P.2d 800, 803 (Okla.), *cert.
>>denied*, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995).
>>"Words used in any statute are to be understood in their ordinary
>>sense, except when a contrary intention plainly appears." Okla.
>>Stat. tit. 25 § 1.

*Melvin v. Nationwide Debt Recovery, Inc.*, 2000 WL 33950122 (W.D. Okla.) (holding that the OCPA does not cover the practices of debt collectors). The Court rejects Citadel's suggested construction of the OCPA for the following reasons.

First, Citadel's construction does not comport with the general purpose and object of the OCPA. The ordinary definitions and use of the words "consumer" and "customer"[4] do not include non-customer competitors/former distributors such as EMS. "Consumer" means "[o]ne that consumes. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 490, and "[a] person who buys goods or services for personal, family, or household use, with no intention of resale." BLACK'S LAW DICTIONARY at 358 (9th ed.). Similarly, "customer" means "one that purchases some commodity or service." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 559. Although the OCPA defines a "consumer transaction" as including those that have "business oriented" purposes, a person must have *consumed* a commodity or service in order to be an "aggrieved consumer" with a private right of action. The fact that EMS's predecessor-in-interest was once a distributor involved in the "business oriented" purpose of selling and distributing Citadel's composite wrap products does not make Citadel an "aggrieved consumer" entitled to

---

[4] The OCPA uses the terms "consumer" and "customer" interchangeably in the provision that confers a private right of action. Compare Section 761.1(A) ("aggrieved consumer") with Section 761.1(B) ("aggrieved customer").

pursue damages under the OCPA.

Second, Citadel appears to be correct in its assertion that the OCPA does not exempt a business like itself from recovering under the OCPA. But such a business must be an "aggrieved consumer" in order to have a private right of action under Section 761.1(A). Plaintiffs are not aggrieved consumers because they admit they "have not been and are not consumers of any of EMS's products."

Third, Citadel is again correct that the OCPA defines "person" to include a corporation or any other legal entity, 15 Okla. Stat. § 752(1). However, the word "person" is used in the OCPA to describe those who are engaged in unlawful practices, not those who are entitled to a private right of action. For example, Section 753 of the OCPA provides that

> "[a] **person** engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 et seq. of this title, when, in the course of the **person's** business, the **person**: . . . 25. Knowingly causes a charge to be made by any billing method to a consumer for services which the **person** knows was not authorized in advance by the consumer. (Emphasis added).

In reviewing the act, this Court has found no use of the word "person" suggesting that a non-consumer business competitor has standing to assert a claim under the OCPA.

Fourth, this Court declines to adopt the view expressed in *John Labatt Ltd. v. Molson Breweries*, 853 F.Supp. 965 (E.D. Mich. 1994). "The majority of cases have reached a contrary opinion[,]" and have concluded that the Michigan Consumer Protection Act does not create a private right of action for a business competitor. *Watkins & Son Pet Supplies v. Iams Co.*, 107 F.Supp.2d 883, 892 (S.D. Ohio 1999);

For the foregoing reasons, the Court concludes that the motion for partial summary

judgment should be granted as to plaintiffs' claim for violation of the Oklahoma Consumer Protection Act (Count IX of the Second Amended Complaint).

### F. Applicable Statute of Limitations on the Claim for "Commercial Disparagement/Trade Libel/Injurious Falsehood"

In its motion, EMS argued that Citadel's claim for "Commercial Disparagement/Trade Libel/Injurious Falsehood" (Count X of the Second Amended Complaint) is subject to Oklahoma's one year statute of limitations for libel and slander. In its reply, EMS concedes that Citadel "is likely correct" in asserting that Count X is not subject to the one year statute.

### G. Claim Duplication

EMS argues that Citadel's claim for Commercial Disparagement/Trade Libel/Injurious Falsehood (Count X in both the original Petition and in the Second Amended Complaint) is duplicative of plaintiffs' claim for unfair competition.

Although the original Petition contained a claim for "unfair competition," the Second Amended Complaint does not. The motion therefore appears to be moot on this point.

### III. Conclusion

For the reasons set forth above, the Motion for Partial Summary Judgment of defendant Energy Maintenance Services Group I, LLC ("EMS") [Doc. # 50] is granted in part (as to plaintiff Walker's "non-trademark" claims; plaintiffs' common law claim for misappropriation of trade secrets found at Count VII of the Second Amended Complaint; plaintiffs' claim for "breach of fiduciary duties and conversion against all defendants/conspiracy" found at Count V of the Second Amended Complaint, insofar as it is based upon the alleged misappropriation of trade secrets; and plaintiffs' claim for violation of the Oklahoma Consumer Protection Act found at Count IX of the Second Amended Complaint), denied in part, and is moot in part.

ENTERED this 23rd day of June, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma